**242 Tenth Invs. LP v GVC 242 Tenth Sponsor, LLC**

2024 NY Slip Op 33737(U)

October 21, 2024

Supreme Court, New York County

Docket Number: Index No. 651242/2021

Judge: Joel M. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 03M

------------------------------------------------------------------------------X

242 TENTH INVESTORS LP,

Plaintiff,

- v -

GVC 242 TENTH SPONSOR, LLC, GVC 242 TENTH
SPONSOR INV LLC

Defendants.

------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 651242/2021 |
| **MOTION DATE** | 03/15/2024, 03/15/2024 |
| **MOTION SEQ. NO.** | 009 010 |

**DECISION + ORDER ON MOTION**

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 009) 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 291, 339, 340, 341, 342, 343, 344, 353

were read on this motion for                   SUMMARY JUDGMENT          .

The following e-filed documents, listed by NYSCEF document number (Motion 010) 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 354, 355, 356, 357, 358, 359, 360, 361, 362

were read on this motion for                   SUMMARY JUDGMENT          .

     On these motions, both Defendants GVC 242 Tenth Sponsor, LLC ("Sponsor") and GVC 242 Tenth Sponsor Inv LLC ("Sponsor Inv" and, collectively, "Defendants") and Plaintiff 242 Tenth Investors LP's ("Plaintiff" or "Investor") move for summary judgment in their favor on Plaintiff's Complaint. For the following reasons, Defendants' motion for summary judgment is granted and Plaintiff's motion is denied.

**651242/2021 242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No. 009 010**

**Page 1 of 13**

1 of 13

## BACKGROUND

As relevant here, Investor and Defendants formed the Partnership pursuant to the Limited Partnership Agreement of 242 Tenth Holdings LP, dated as of April 17, 2019 (the "LPA") to act as the sole limited partner of 242 Tenth Owner LP (the "Property Owner"), the owner of the property located at 242 Tenth Avenue, New York, New York (the "Property") (NYSCEF 178 ["LPA"]).

Sponsor Inv's initial capital contribution was approximately 20 percent of the total initial capital contribution. Investor paid the remaining 80 percent (NYSCEF 344 [Plaintiff's Response to Defendants' Undisputed Statement of Facts ["DUSF"] ¶2 [undisputed]). Under the LPA, Sponsor is the general partner of the Partnership and Investor is a limited partner (DUSF ¶3).

The Partnership was established for the purposes, *inter alia*, of acquiring, holding, renovating, improving, and operating a mixed-use (commercial and residential) property. At the time of acquisition, the Property was a four-story building with a retail space located on the ground floor, rear courtyard and carriage house, and six residential units located on the three floors above (two residential units per floor) (DUSF ¶5 [undisputed]). The seller represented that three of the residential units were free market and the other three were rent regulated (DUSF ¶6 [undisputed]). At the time of the acquisition, the three free market units were occupied and two of the three rent regulated units were occupied (DUSF ¶7 [undisputed]).

While the parties dispute the budget amount, they agree that the preliminary underwriting included the assumption that Sponsor would be able to vacate and cosmetically renovate five of the six apartments (the three free market units, the vacant rent regulated unit, and one of the two occupied rent regulated units) and common areas of the Property, assuming that Sponsor would be able to vacate one of the occupied rent regulated units, but not both of the occupied rent

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

**Page 2 of 13**

2 of 13

regulated units (NYSCEF 355 [Plaintiff's Response to Defendant's Counterstatement of Fact ("PRCF")] ¶7). Through the planned cosmetic renovations ("Individual Apartment Improvements" or "IAI") of the regulated apartments Sponsor was able to vacate, Sponsor would increase the legal rents for those regulated units and eventually deregulate them through High-Rent Deregulation (NYSCEF 177 ["Bogino Aff"] ¶4).

Pursuant to Sections 4.1(a) and 4.2(a) of the LPA, the parties agreed to an Initial Business Plan for the Property (*see* LPA ¶4.2(a) ["[a]nnexed hereto as Exhibit F is the initial business plan with respect to the Property (the 'Initial Business Plan'), which has been approved and adopted by the Partnership and the Partners"]), which was then considered the "Approved Business Plan" (*see* LPA, Exhibit F ["Approved Business Plan"]). The Approved Business Plan of the Partnership annexed as Exhibit F does not contain a line item for renovation costs.

The LPA provided for $87,000 in Construction Management Fees payable to Sponsor (NYSCEF 337 [Defendant's Response to Plaintiff's Undisputed Statement of Facts ("PUFS")] ¶35).

The LPA also provided that certain actions were "Major Decisions" requiring Investor's approval (LPA § 4.5). These include revising the Business Plan and amending or supplementing the Approved Business Plan (LPA § 4.5(a)) or Approved Budget which result in expenses increasing $50,000 or more in a calendar year (LPA § 4.5(b)), terminating or modifying the construction contract relating to the renovation of the Property (LPA § 4.5(c)), and entering into a Major Contract (a value of $50,000 or more) (LPA § 4.5(j)).

After the purchase of the Property in April 2019, when Sponsor uncovered the existing conditions behind the walls of the building, Sponsor discovered that the building systems, including the electrical, plumbing and building structure, were in worse condition than

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

**Page 3 of 13**

3 of 13

previously known or anticipated, and Sponsor was concerned about the ongoing safety/habitability of the building. A tenant in one of the purported free market apartments also filed a rent overcharge complaint with the Division of Housing and Community Renewal ("DHCR"), which, among other things, requested that DHCR make a determination that the apartment was rent stabilized and not free market ("3F RS Claim"). The prior owner of the Property had represented that Unit 3F was a fair market unit and Sponsor entered into settlement negotiations with the prior owner with respect to this misrepresentation (PRCF ¶12 [undisputed]).

In June 2019, the Housing Stability and Tenant Protection Act of 2019 ("HSTPA") was signed into law, precluding the ability to substantially increase the legal rents of regulated apartments through Individual Apartment Improvements, and eliminated the ability to deregulate apartments through High-Rent Deregulation (PRCF ¶13 [undisputed]).

Thereafter, Sponsor advised Investor that the change in the law would "likely require a change to our business plan" NYSCEF 207; NYSCEF 337 [Defendant's Response to Plaintiff's Undisputed Statement of Facts ("PUFS")] ¶48 [undisputed]). Approximately one month later, on July 31, 2019, Sponsor approached Investor with a request for approval of the general contractor's initial proposals to begin the residential and common area renovations, enclosing two estimates, which was approved (PUFS ¶¶50, 52 [undisputed]).

In December 2019, Sponsor explored the idea of doing a "substantial rehabilitation" of the Property (PUFS ¶65 [undisputed]). According to Investor, on January 13, 2020, Sponsor raised the potential of "substantial rehabilitation" to Investor for the first time by email, as part of its monthly updates circulating financial reports for the Property (PUFS ¶68 [undisputed]).

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

**Page 4 of 13**

4 of 13

[* 4]

In January 2020, Sponsor terminated the original contractor, By EG, LLC, due to problems with By EG's performance on the project, and retained a new contractor, Black Square Builders ("BSB") (PUFS ¶69 [undisputed]). Although BSB provided Sponsor with an initial and revised quote, Sponsor did not execute a prime contract with BSB concerning the renovation work, or memorialize the BSB estimates. Rather, BSB billed Sponsor for work after it was performed, and Sponsor then paid BSB's invoices (PUFS ¶78 [undisputed]).

On March 6, 2020 Sponsor emailed Investor, seeking approval to execute the $400,000 settlement to settle Property Owner's claims against the prior owner for breach of representation regarding unit 3F (PUFS ¶¶85, 86 [undisputed]). The March 6 email also stated that: "|As previously mentioned, the work related to the needed change to our business plan as a result of the rent law change, the additional work needed to hopefully qualify for substantial rehabilitation, as well as the unbudgeted 6th unit renovation are all costs in excess of our original budget. The settlement payment will be used to cover those incremental costs, hopefully avoiding the need for a capital call" (NYSCEF 231).

On March 9, 2020, Christian Busch of Investor responded to Sponsor, (i) providing Investor's approval for the settlement, and (ii) requesting additional information concerning Sponsor's proposals for substantial rehabilitation (NYSCEF 231). Investor claims that it never received the requested information.

On October 23, 2020, Sponsor provided a "construction update" to Investor, which disclosed, for the first time, that the cost of the Property's renovations had increased (by Sponsor's calculations) from $675,000 to over $1.2 million. According to Investor, Sponsor disclosed extensive and fundamental changes to the size and scope of the Property's renovation, the majority of which had already occurred.

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

**Page 5 of 13**

5 of 13

On October 30, 2020, one day after forwarding Sponsor's breakdown of renovation expenses to Investor, Sponsor issued a capital call, requesting the payment of additional capital by Investor (PUFS ¶123).

On January 20, 2021, Roman Arzhintar forwarded a letter to Sponsor by email, informing Sponsor of its decision to terminate Sponsor as General Partner pursuant to the LPA, effective February 15, 2021. Investor's covering email stated "Jeff & Trevor, [p]lease find attached the sponsor removal letter previously discussed with Christian. Hard copies to follow by terrestrial mail." (PUFS ¶131 [undisputed]). Sponsor received the Removal Letter by certified mail on January 25, 2021 (PUFS ¶132 [undisputed]).

On January 27, 2021, Sponsor responded to the January 20 Letter with a letter of its own, claiming that "Investor's attempt to remove Sponsor as General Partner is invalid" (PUFS ¶133 [undisputed]).

On February 8, 2021, Investor sent a letter to Sponsor in response to Sponsor's January 27, 2021 letter, requesting to "discuss an orderly transition so that a new General Partner may assume its role on February 15[, 2021]." However, Sponsor continued to reject the validity of its removal as General Partner (PUFS ¶137 [undisputed]).

Investor commenced this lawsuit on February 23, 2021 (NYSCEF 1) alleging that Sponsor committed material breaches and is in default under the LPA, including by unilaterally changing the Partnership's business plan and budget without Investor's consent, dramatically expanding the originally planned and Investor-approved renovations, and exhausting the Partnership's capital in breach of the LPA.

Investor also moved for a temporary restraining order and preliminary injunction against Sponsor, seeking to enjoin Sponsor from fulfilling its duties as general partner (NYSCEF 4-13;

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

**Page 6 of 13**

6 of 13

[* 6]

19-37; 40-47). These applications were denied. The Court ordered the parties to enter in a confidentiality order and ordered Sponsor to produce certain documents requested by Investor (NYSCEF 56).

Following the denial of Investor's motion, the parties proceeded with discovery and Investor supplied an interrogatory answer confirming that Investor has suffered no monetary damages (NYSCEF 174). At deposition, Mr. Arzhintar testified that he was unaware of any need to supplement or amend the interrogatory answer and was unable to identify any way in which Investor has suffered monetary damages (NYSCEF 168 at 248:12-249:25).

Both parties now move for Summary Judgment on Plaintiff's claims for Declaratory Judgment/Injunctive Relief, (2) Breach of Fiduciary Duty against Defendant GVX 242 Tenth Sponsor, LLC, (3) Breach of Partnership Agreement, (4) Indemnification, and (5) Accounting.

## **DISCUSSION**

Under CPLR 3212, summary judgment is appropriate when a party establishes with evidence "that there is no material issue of fact to be tried, and that judgment may be directed as a matter of law" matter of law." (*Brill v City of New York*, 2 NY3d 648, 651 [2004]). "Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). If the moving party crosses that threshold, the party opposing the motion "must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim or must demonstrate acceptable excuse for his failure to meet the requirement of tender in admissible form; mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *see also Glassman v Weinberg*, 154 AD3d 407, 408 [1st Dept 2017]).

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

**Page 7 of 13**

7 of 13

[* 7]

## I. *Declaratory Judgment/Injunctive Relief*

In Investor's first cause of action, Investor seeks, among other things, a declaratory judgment that the Investor's removal of the Sponsor as general partner of the Partnership is valid and enforceable, and that the Investor is now the sole general partner of the Partnership (NYSCEF 1 ["Compl."] ¶86).

Based on the record presented, the Court finds that Investor's purported removal of Sponsor as general partner is *not* valid or enforceable because Investor failed to satisfy several conditions precedent to such removal under the plain language of the LPA. "[A] condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises'" (*MHR Capital Partners LP v Presstek, Inc.*, 12 NY3d 640, 645 [2009] [citations omitted]). "Express conditions must be literally performed; substantial performance will not suffice" (*id.*).

Section 4.4 of the LPA grants Investor a right to remove Sponsor as general partner if exercised within 90 days of Investor's "actual knowledge" of an "Investor Trigger Event" (LPA § 4.4). "Investor Trigger Event" is defined in Section 1.1, in relevant part, as Sponsor's Default, which requires written notice and an opportunity to cure under Section 11.1(e) (LPA § 11.1(e)). Section 4.4 of the LPA also provides that "[a]s a condition to a removal of Sponsor as General Partner for any reason, Investor shall either (i) cause all Loan Guarantors designated by Sponsor to be released from all Loan Guaranties (and provide evidence thereof to Sponsor) relating to the period from and after such removal or (ii) if such Loan Guarantors are not released to (x) cause a Creditworthy Indemnitor (defined below) to indemnify such Loan Guarantors" (NYSCEF 178 §4.4).

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

**Page 8 of 13**

8 of 13

First, Defendants have demonstrated that Investor failed to give proper and timely notice of the removal right under the LPA's notice provision. Section 12.2 of the LPA provides, in relevant part, that "any notices" sent by "nationally recognized overnight carrier," including the Purported Removal Notice under Section 4.4(a), "shall be deemed given when received … at the address or … for which such party has given notice in accordance with the provisions hereof" (LPA §12.2). According to Investor, it first had knowledge of the alleged default on October 23, 2020, the date Sponsor and Investor held a conference call to discuss the status of the project. However, while the Removal Letter is dated January 20, 2021, it was not received by Defendants via certified mail until January 25, 2021, after the 90 days window had passed, and thus is untimely (*Maxton Builders, Inc. v Lo Galbo*, 68 NY2d 373, 378 [1986] ["[W]hen a contract requires that written notice be given within a specified time, the notice is ineffective unless the writing is actually received within the time prescribed"]).

And even if the Removal Letter was considered timely, Investor failed to provide Sponsor with the contractually-required 30-day cure period under Section 11.1 of the LPA before exercising the removal right (LPA 11.1(e)). Here, Investor sent a single letter, dated January 20, 2021, notifying Sponsor of having Defaulted and exercising the Investor Removal Right under Section 4.4. Investor argues that since its January 20, 2021 letter stated that any removal of Sponsor as general partner would be effective February 15, 2021, this was essentially a cure period. However, this argument is unavailing, as a period to cure has to occur prior to removal, and the January 21, 2021 letter does not demand or mention a right to cure.

Finally, even if the Court were to accept Investor's argument that Sponsor's breach was not curable, Investor's claim still fails because Investor failed to comply with the express condition precedent in Section 4.4, which provides that ***"[a]s a condition to a removal*** of

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

**Page 9 of 13**

9 of 13

Sponsor as General Partner for any reason, Investor shall either (i) cause all Loan Guarantors designated by Sponsor to be released from all Loan Guaranties (and provide evidence thereof to Sponsor) relating to the period from and after such removal or (ii) if such Loan Guarantors are not released to (x) cause a Creditworthy Indemnitor (defined below) to indemnify such Loan Guarantors" (NYSCEF 178 §4.4 [emphasis added]).

Investor does not dispute that it failed to obtain the release or indemnification set forth in Section 4.4. Rather, Investor argues that its failure to satisfy the condition precedent should be excused because it was "caused" by Sponsor, citing *A.H.A. Gen. Const., Inc. v New York City Hous. Auth.*, 92 NY2d 20, 31 [1998] ["[A] party to a contract 'cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition'"]). According to Investor, following Investor's Removal Notice and prior to removal of Sponsor as general partner, Investor attempted to engage Sponsor to discuss transition issues on multiple occasions, but Sponsor refused. However, Sponsor's purported "reject[ion]" of Investor's requests to "discuss transition issues on multiple occasions" occurred *after* Investor's January 21, 2021 letter. There is no evidence in the record of anything that Sponsor did before the January 21, 2021 letter that "caused" Investor's non-performance. Moreover, Investor's suggestion that it could not have performed the conditions precedent without Sponsor is unavailing, as Section 4.4 specifically provides that if the "Loan Guarantors are not released" Investor could "cause a Creditworthy Indemnitor . . .to indemnify such Loan Guarantors."

Investor alternatively argues that the January 21, 2021 letter was simply its initial notice that was not meant to be effective until February 15, 2021, and thus, Investor had time between the January 21, 2021 letter and February 15, 2021 to comply with the condition precedent, and it

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**          **Page 10 of 13**
**Motion No.  009 010**

10 of 13

would have done so if not for Sponsor's refusal to engage. However, this argument fails, as Removal would have been untimely as of February 15, 2021.

Therefore, Investor has failed to raise an issue of fact on its claim for declaratory judgment, and summary judgment is granted in favor of Defendants.

## II. Breach of Fiduciary Duty & Breach of Contract

Defendants also are entitled to summary judgment on Investor's breach of fiduciary duty (Count II)[1] and breach of contract (Count III) causes of action because Investor has not demonstrated that it has suffered any harm from the alleged breach. It is well-settled that "[d]amages are an essential element of a cause of action for breach of fiduciary duty" (*Mohinani v Charney*, 208 AD3d 404, 405 [1st Dept 2022], *lv to appeal denied*, 39 NY3d 913 [2023]). The same rule applies to breach of contract (*see Milan Music, Inc. v Emmel Communications Booking, Inc.*, 37 AD3d 206, 206 [1st Dept 2007] ["Without a clear demonstration of damages, there can be no claim for breach of contract"]; *Gordon v Dino De Laurentiis Corp.*, 141 AD2d

---

[1] It is unclear what, if anything, remains on Plaintiff's breach of fiduciary duty cause of action. In a footnote, Investor admits: "The initial primary basis for Investor's fiduciary duty claims was Sponsor's alleged payment of its own attorneys' fees with funds belonging to Investor or its related entities, and its refusal to permit access to the Partnership's books and records. After discovery, Investor did not identify evidence showing that Sponsor paid its legal bills with Investor funds, and Sponsor was forced to permit Investor the requested access to records by the Court's order on preliminary relief" (NYSCEF 343 n 10). However, Plaintiff argues that Sponsor's attempts to obtain "incentive" fees, based on its "substantial rehabilitation" efforts constitutes a breach of fiduciary duty. But this claim is duplicative of the breach of contract claim, and therefore would be dismissed. Unlike *S3 LLC v De Lage Landen Fin. Services, Inc.*, 2020 NY Slip Op 32695[U], 12 [Sup Ct, NY County 2020]), upon which Plaintiff relies, there is nothing in the Complaint or the opposition demonstrating that Sponsor breached a duty independent of its contractual duties (*see id.* [noting that "as S3's contractually identified attorney-in-fact, DLL would have owed fiduciary duties to S3 independent of what might have been expressly provided for in the Agreement"]). Moreover, Investor fails to persuasively address Sponsor's argument that the allegations in paragraphs 90-92 of the Complaint should be dismissed because these allegations establish harm to the *Partnership* as opposed to Investor and thus are derivative claims improperly pleaded as direct claims.

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

**Page 11 of 13**

11 of 13

435, 436 [1st Dept 1988] ["In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint, and the pleadings must set forth facts showing the damage upon which the action is based"]).[2]

Accordingly, summary judgment is granted in favor of Defendant on these two claims.[3]

### III.    Attorney's Fees

Finally, Sponsor's request for attorneys' fees and costs pursuant to Section 15.22 of the LPA is granted.  Under LPA § 15.22, the "prevailing party" in any legal action concerning the

---

[2] At oral argument, Plaintiff did not advance the argument that Investor is entitled to damages (even nominal damages), but rather confirmed that the purpose of the breach of contract claim is to obtain the declaratory judgment they seek (NYSCEF 369 ["Tr"] at 13:11-17 ["THE COURT: Does your client at trial, if we have one, would it contend that the additional expenditures resulted in damage to sponsor's net? MR. ROBERTSON: If you mean would the client seek to recover damages based on that? I think the gravamen of this action is essentially to assert the removal rights ...."]; 14:18-25, 15:1-15 ["THE COURT: We are done with discovery, right? We are ready for final trial, so all of the facts that you have and need presumably have been exchanged, at least insofar as, you know, claims for breach, whether the breach caused any harm, that's all -- the record is done. So, at this point now if we started trial tomorrow, your focus would be just on getting a ruling declaring that the sponsor should be replaced, but not to recover any funds? MR. ROBERTSON: We have not asserted claims to monetary damages with respect to our breach of contract claims. Count one of the complaint is a declaratory judgment injunctive relief claim. And essentially the entire gravamen of this action from the outset has been to vindicate investor's rights to -- THE COURT: That's one of the counts. But you also have a count for breach of contract; count three. Right? MR. ROBERTSON: Yes. Yes. THE COURT: And what is that seeking? MR. ROBERTSON: Well, count three underlies count one. But then again, we also have not sought summary judgment for the recovery of monetary damages at this point."];  27:10-14 ["THE COURT: We are sort of dancing on the head of a pin, because as far as I can reckon from my questioning of plaintiff's counsel, the whole purpose of the breach of contract claim is simply to get to the declaratory judgment they want."]).

[3] Plaintiff's indemnification and accounting claims are also dismissed.  There is no dispute that an award of attorneys' fees is a request for relief and not an independent cause of action (*Pier 59 Studios L.P. v Chelsea Piers L.P.*, 27 AD3d 217 [1st Dept 2006] ["Plaintiff may not maintain a separate cause of action for attorneys' fees, which are only recoverable as an element of contract damages if a breach of the sublease is proven"]).  As to the accounting claim, Investor submits that the Court's April 15, 2021 order (NYSCEF 56) compelled Sponsor to provide the information request by Count V.  While the Court never ordered an accounting (just access to books and records), Plaintiffs have indicated that they received what they wanted, and therefore this cause of action is dismissed as moot.

**651242/2021    242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

**Page 12 of 13**

12 of 13

LPA "shall be entitled to collect from the other party all reasonable out-of-pocket costs, expenses and attorney's fees actually incurred in connection with such action or proceeding." Since Sponsor is the prevailing party, this request is granted.

Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Mot. Seq. 009) is **GRANTED**; and the complaint is dismissed with costs and disbursements to defendant as taxed by the Clerk upon the submission of an appropriate bill of costs; and it is further

**ORDERED** that Plaintiff's Motion for Summary Judgment (Mot. Seq. 010) is **DENIED**; and it is further

**ORDERED, ADJUDGED** and **DECLARED** that Investor's removal of the Sponsor as general partner of the Partnership is invalid and void; it is further

**ORDERED** that Defendant submit its application for reasonable attorney's fees with supporting documentation within fifteen (15) days of the date of this Order; Plaintiff shall have seven (7) days thereafter to file a response; and it is further

**ORDERED** that the Clerk is directed to enter judgment accordingly.

This constitutes the decision and order of the Court.

20241021174615JMCOHENCF4D073ABE824F3686838C8F0D21102F

| <u>10/21/2024</u> | | JOEL M. COHEN, J.S.C. |
| DATE | | |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**651242/2021   242 TENTH INVESTORS LP vs. GVC 242 TENTH SPONSOR, LLC**
**Motion No.  009 010**

Page 13 of 13